IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH J. SALLES,                                        No. 2:15-cv-2428-CMK

         Plaintiff,

    vs.                                                     MEMORANDUM OPINION AND ORDER

COMMISSIONER OF SOCIAL
SECURITY,

         Defendant.

_____/

         Plaintiff, who is proceeding with retained counsel, brings this action for judicial

review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).  Pending

before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-

motion for summary judgment (Doc. 19).  For the reasons discussed below, the court will deny

plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion

for summary judgment.

/ / /

/ / /

1

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits with a protective filing date of July 16, 2012, alleging an amended onset of disability on November 22, 2006, due to ruptured appendix, stomach surgery, back injury, neck, manic depressive (Certified administrative record ("CAR") 61, 72, 73, 83, 146-50). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on June 9, 2014, before Administrative Law Judge ("ALJ") Daniel G. Heely. In a July 25, 2014, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1.  The claimant has not engaged in substantial gainful activity since July 16, 2012, the application date (20 CFR 416.971 *et seq*).

2.  The claimant has the following severe impairments: back/neck impairment, depression, asthma, and obesity (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following additional limitations: could sit six hours, stand/walk 6 hours each with normal breaks; lift and/or carry 20 pounds occasionally, 10 pounds frequently; could never climb ladders, ropes or scaffolds; could occasionally climb ramps or stairs; could never work around hazards like moving dangerous machinery or unprotected heights; could not operate motor vehicles; could not work around concentrated fumes, odors, smoke, dusts, other environmental irritants in the workplace; and is limited to unskilled work.

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on October 3, 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.964).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

/ / /

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3

1    10.    The claimant has not been under a disability, as defined in the
        Social Security Act, since November 12, 2008, the date the
2        application was filed (20 CFR 416.920(g)).

3   (CAR 11-9-25).  After the Appeals Council declined review on September 21, 2015, this appeal

4   followed.

## II. STANDARD OF REVIEW

6           The court reviews the Commissioner's final decision to determine whether it is:

7   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

8   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

9   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

10  (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

11  conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

12  both the evidence that supports and detracts from the Commissioner's conclusion, must be

13  considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

14  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

15  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

16  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

17  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

18  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

19  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

20  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

21  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

22  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

23  Cir. 1988).

## III. DISCUSSION

25          Plaintiff argues the ALJ erred in two ways: (1) the ALJ erred in not accepting his

26  treating physician's opinion; and (2) the ALJ erred in finding plaintiff's testimony and statements

4

1  not credible.

2          **A.      Medical Opinions**

3          Plaintiff claims the ALJ erred in rejecting his treating physician's opinion.  He

4  contends the ALJ failed to cite to any legitimate evidentiary basis to support his rejection of Dr.

5  Shen, and simply substituted his own lay opinion for that of the medical professional.

6  Defendant counters that the ALJ properly evaluated Dr. Shen's opinion, provided valid and

7  legally supported reasons for giving minimal weight to most of Dr. Shen's opinion, and was not

8  bound to accept unsupported limitations.

9          The weight given to medical opinions depends in part on whether they are

10  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

11  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

12  professional, who has a greater opportunity to know and observe the patient as an individual,

13  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

14  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

15  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

16  (9th Cir. 1990).

17          In addition to considering its source, to evaluate whether the Commissioner

18  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

19  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

20  uncontradicted opinion of a treating or examining medical professional only for "clear and

21  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

22  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

23  by an examining professional's opinion which is supported by different independent clinical

24  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

25  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

26  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

1   81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

2   the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

3   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

4   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

5   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

6   without other evidence, is insufficient to reject the opinion of a treating or examining

7   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

8   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

9   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

10  see also Magallanes, 881 F.2d at 751.

11              As to Dr. Shen's opinion, the ALJ stated:

12              On May 20, 2014, I-Hsuan Shen, D.O., completed a medical
                source statement (Exhibit 12F).  Dr. Shen is the claimant's primary
13              treating physician.  Dr. Shen was of the opinion that the claimant
                could sit, stand and walk for thirty minutes at a time, and no more
14              than two hours each in an eight-hour workday.  Dr. Shen opined
                that the claimant needed a cane to ambulate and that it was
15              medically necessary.  Nonetheless, when the claimant was not
                using a cane he could carry small objects freely.  Dr. Shen stated
16              that the claimant's degenerative disc disease of the spine, chronic
                low back pain and chronic abdominal pain supported the
17              claimant's limitations assessment.  Dr. Shen did not find any
                significant manipulative limitations and found that the claimant
18              could perform occasional bilateral foot controls.  Dr. Shen was of
                the opinion that the claimant could never climb stairs and ramps,
19              nor climb ladders or scaffolds, and never stoop or crawl.  The
                claimant could occasionally balance, kneel and crouch.
20
                Additionally, Dr. Shen opined that the claimant's asthma restricted
21              his work abilities in that he could never work at unprotected
                heights, could never work around dust, odors, fumes and
22              pulmonary irritants, and could never work in extreme cold or
                extreme heat.  Dr. Shen believed the claimant could occasionally
23              move mechanical parts, operate motor vehicles, work in humidity
                and wetness, and around vibrations.  The clamant's asthma also led
24              to the claimant's limitation of only being able to be around
                moderate levels of noise (Exhibit 12F/6).  Dr. Shen was also of the
25              opinion that due to the claimant's physical impairments, he could
                not shop or travel without a companion for assistance (Exhibit
26              12F/7).  Dr. Shen stated that the claimant's physical impairments

1   did not limit his ability to walk a block at a reasonable pace or
    rough or uneven surfaces, ability to use standard public
2   transportation, ability to climb a few steps with the use of a
    handrail, ability to prepare a simple meal and feed himself, ability
3   to care for personal hygiene and his ability to sort, handle or use
    paper files (Exhibit 12F/7).  Lastly, Dr. Shen opined that the
4   claimant's above limitations would last more than 12 consecutive
    months (Exhibit 12F).
5
    Some weight is given to Dr. Shen's opinion in regards to the
6   limitations that the claimant's asthma causes as well as the
    limitation that the claimant could occasionally lift/carry up to 20
7   pounds.  Yet, the majority of Dr. Shen's opinion is rendered less
    persuasive due to the inconsistencies between his treatment reports
8   and his medical source statement.  For example, Dr. Shen stated
    that the claimant could not ambulate without a cane; however,
9   treatment notes indicate that the claimant had a normal gait
    (Exhibit 2F/32).  Moreover, other medical evidence of record also
10  found that the claimant could ambulate effectively (Exhibit 3F/3).
    Dr. Shen's opinion that the claimant could not shop or travel
11  without a companion is seemingly based on the claimant's
    subjective complaints because the claimant stated in earlier
12  disability documents that he could go out on his own (Exhibit
    5E/4).  For these reasons, Dr. Shen's opinion is given minimal
13  weight.

14  (CAR 19-20).

15          There are medical treatment notes in the record from Dr. Shen covering the period

16  of July 2011 through March 2013, and April 2014.  Throughout the record, Dr. Shen treated[3]

17  plaintiff's back and neck pain with various pain medication.  With few exceptions, Dr. Shen

18  noted that plaintiff had no gross motor deficits and his muscle strength was 5/5 for the upper and

19  lower extremity.  On only two occasions, April 26, 2012 and May 1, 2012, Dr. Shen noted that

20  plaintiff was unable to sit or stand in one position for longer periods of time, and was frequently

21  changing positions.  (CAR 259, 263).  In fact, on May 1, 2012, Dr. Shen noted that plaintiff

22  walked with a normal gait; no limitation was noted in the record and no mention of needing to

23  adulate with the assistance of a cane.  (CAR 259).  In addition, both before and after those two

24

25      [3]     As the ALJ rejected Dr. Shen's opinion as to plaintiff's limitations relating to his
    back and neck, but not the asthma, this opinion only forces on the treatment plaintiff received for
26  his back and neck.

1  visits, it is noted several times that plaintiff's low back pain was stable, and that the pain

2  medication was sufficient to manage his pain.  (CAR 297, 387, 396).  There were also several

3  visits wherein plaintiff was seen for an acute care issues unrelated to his back, and no mention of

4  his pain was made.

5             As noted above, the ALJ set forth in his opinion the limitations Dr. Shen opined.

6  The ALJ then determined many of those limitations were not supported by the treatment notes.

7  The undersigned agrees.  While plaintiff was treated by Dr. Shen for pain, and Dr. Shen

8  prescribed different pain medication over the years, the medical notes reflect that the medication

9  was fairly effective in controlling plaintiff's pain.  There is no notation in Dr. Shen's notes that a

10  cane was ever prescribed, medically necessary, or used by plaintiff.  Instead, Dr. Shen noted that,

11  with just two exceptions, plaintiff had no gross motor deficits and noted plaintiff's gait was

12  normal on at least one occasion.  The two occasions where it was otherwise noted, plaintiff had a

13  difficult time staying in one position for longer periods of time, not that he was having difficulty

14  ambulating.  In addition, as the ALJ noted, other observations of plaintiff indicate that he did not

15  have trouble ambulating other than having a relatively slow gait. Thus, the significant limitations

16  Dr. Shen opined are simply not supported by her own treatment records.  Similarly, the ALJ

17  noted the inconsistency between plaintiff's own statements, such as his ability to go shopping,

18  and Dr. Shen's opinion that plaintiff was able to go out on his own.

19             The ALJ did not reject Dr. Shen's opinion in favor of a non-examining reviewing

20  physician.  Rather, the ALJ rejected Dr. Shen's opinion as unsupported by medical records and

21  inconsistent.  While the ALJ did give substantial weight to the opinions of the reviewing

22  physicians, this was not used as a reason for discounting Dr. Shen's opinion.  An unsupported

23  opinion of a treating physician may be rejected.  See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th

24  Cir. 1995).  The undersigned finds the reasons the ALJ articulated for rejecting Dr. Shen's

25  opinion to be clear and convincing and supported by substantial evidence.  Thus, there was no

26  error.

## B.   Credibility Determination

Next, plaintiff argues the ALJ erred in finding plaintiff not credible, and failing to articulate any reasons for his finding.  The defendant counters that the reasons given were several and sufficient.

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

///

1        The Commissioner may, however, consider the nature of the symptoms alleged,

2   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

3   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

4   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

5   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

6   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

7   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

8   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

9   claimant cooperated during physical examinations or provided conflicting statements concerning

10  drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

11  claimant testifies as to symptoms greater than would normally be produced by a given

12  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

13  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

14        Regarding reliance on a claimant's daily activities to find testimony of disabling

15  pain not credible, the Social Security Act does not require that disability claimants be utterly

16  incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

17  repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does

18  not . . . [necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue,

19  495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir.

20  2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim

21  of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted

22  travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant

23  was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook

24  meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not

25  easily transferable to what may be the more grueling environment of the workplace, where it

26  might be impossible to periodically rest or take medication").  Daily activities must be such that

1   they show that the claimant is "able to spend a substantial part of his day engaged in pursuits

2   involving the performance of physical functions that are transferable to a work setting." Fair,

3   885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily

4   activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676,

5   681 (9th Cir. 2005).

6            As to plaintiff's credibility, the ALJ stated:

7            After careful consideration of the evidence, the undersigned finds
             that the claimant's medically determinable impairments could
8            reasonably be expected to cause the alleged symptoms; however,
             the claimant's statements concerning the intensity, persistence and
9            limiting effects of these symptoms are not entirely credible for the
             reasons explained in this decision.
10   (CAR 22).

11           Plaintiff argues no further reasons were given, and such boiler plate rejection is

12   insufficient.  The undersigned agrees that if that was all the ALJ said in regards to plaintiff's

13   credibility, such a statement would be insufficient.  However, plaintiff ignores the rest of the

14   ALJ's opinion where in he stated:

15           The claimant has described activities of daily living, which are not
             as limited as one would expect considering the complaints of
16           disabling symptoms.  The claimant describes himself as a world
             class drummer who continues to teach weekly drum lessons to a
17           number of students (Exhibit 5E/5).  The clamant is able to tune his
             own drumheads (Hearing Testimony).  The claimant continues to
18           help with household chores (Exhibit 2F/20).  Specifically, the
             claimant washes dishes, does the laundry, mows the lawn, and
19           cooks for his wife and kids at least five times a week (Exhibits
             4F/6 and 5E/3).  The claimant spends at least 45 minutes a day
20           preparing meals for his family (Exhibit 5E/3).  The claimant is able
             to go grocery shopping and spends about two to three hours doing
21           so (Exhibit 5E/4).  The claimant is able to go out alone (Exhibit
             5E/4).  The clamant has a Chihuahua for whom he cares for
22           (Exhibit 5E/2).  Caring for a pet dog requires regular attention and
             some physical effort.  The claimant is able to pay bills, count
23           change, handle a savings account and use a checkbook (Exhibit
             5E/4).  The claimant talks on the phone, texts and chats everyday
24           (Exhibit 5E/5).  The claimant watches approximately two hours of
             television each day (Hearing Testimony).  The claimant has a
25           Facebook, Twitter and email account (Hearing Testimony).

26   / / /

1    Although the claimant has received various forms of treatment for
     the allegedly disabling symptoms, which would normally weigh
2    somewhat in the claimant's favor, the record also reveals that the
     treatment has been generally successful in controlling those
3    symptoms.  On December 29, 2012, the claimant reported that the
     Norco prescription managed his pain well enough for him to be
4    able to carry on with activities of daily living (Exhibit 11F/18).
     Again, on January 28, 2013, the claimant reported to his doctor that
5    he did not have any issues with the Norco prescription, he did not
     need to adjust his prescription and the claimant denied any
6    breakthrough or increased pain (Exhibit 11F/27).  On March18,
     2013, the claimant reported to his doctor that he was able to carry
7    on with his activities of daily living (Exhibit 11F/34).

8    Additionally, inconsistent statements made on the record regarding
     the claimant's post-onset date work activities undermine his
9    credibility.  At the hearing, the claimant testified that after 2004, he
     has only worked as a drum lessons teacher.  Yet, on Mach 24,
10   2013, during his consultative examination, the claimant reported
     not only being a current drum lessons teacher but also serving as a
11   subcontractor for different farms (Exhibit 4F/3).  The claimant did
     not mention his subcontracting work at either his hearing or in his
12   disability documents.  Further, the reported post-onset work
     activities suggest that at least at times, the claimant's daily
13   activities have been greater than the claimant is generally reporting.
     Not only did the claimant fail to report all post-onset work
14   activities at his hearing, he also denied performing as a drummer
     for years[,] failing to clarify that post-onset date he has performed
15   drum shows.  On December 6, 2011, the claimant reported to his
     doctor that he was excited about an upcoming drumming show that
16   he had in Modesto and to prepare he had been increasing his work
     outs (Exhibit 2F/59).

17
     Further, a review of the claimant's work history shows that the
18   claimant worked only sporadically prior to the alleged disability
     onset date, which raises a question as to whether the claimant's
19   continuing unemployment is actually due to medical impairments.
     This skepticism is supported by the fact that the claimant stopped
20   working years before the alleged onset date on December 30, 2004
     because his "job ran out" and not solely due to his medical
21   conditions (Exhibit 3E/2).

22   Another important consideration in this case is that the claimant
     has experienced other non-medical problems such as an
23   incarceration and family issues that suggest that at least some of
     the claimant's difficulties may be situational and not medical in
24   nature (Exhibits 4F/2 and 2F/64/65).  The claimant even explained
     to his psychiatric consultative examiner that many of his suicidal
25   thoughts and auditory hallucinations started after having issues
     with his sons and being arrested (Exhibit 4F/2).  During a routine
26   doctor's visit, the claimant reported that he was upset because of

                                    12

1    his wife's recent surgery (Exhibit 2F/64/65).  Given that these
     situational issues have likely improved, there is a great likelihood
2    that the symptoms presented directly following aggravating events
     are not indicative of the claimant's longitudinal mental health.
3    Additionally, the claimant's psychiatric consultative examiner
     surmised that there was a good likelihood that the claimant's
4    mental condition would improve within the next twelve months
     (Exhibit 4F/7).
5
                . . .
6
     Finally, the claimant's demeanor while testifying at the hearing
7    was generally unpersuasive.  It is emphasized that this observation
     is only one among many being relied on in assessing credibility an
8    is not determinative.  The undersigned concludes that the
     claimant's allegations of debilitating pain and disabling functional
9    limitations are not fully credible.  Neither the objective medical
     evidence nor the subjective allegations, to the extent that they are
10   reasonably credible, warrant any more restrictive functional
     limitations than those the undersigned has found in his case.
11   (CAR 22-23).

12          Plaintiff's argument that the ALJ gave no reasons for discounting his testimony is

13   unsupported by the record.  As set forth above, the ALJ gave several reasons for finding

14   plaintiff's testimony not credible, including his daily activities, successful medical treatment, his

15   inconsistent statements, his work history, and his demeanor at the hearing.  The undersigned

16   finds these reasons sufficient for the credibility determination, and supported by substantial

17   evidence, as cited by the ALJ in his opinion.  See Fair, 885 F.2d at 604 ("Where, as here, the ALJ

18   has made specific findings justifying a decision to disbelieve an allegation of excess pain, and

19   those findings are supported by substantial evidence in the record, our role is not to second-guess

20   that decision.")

21                              **IV.  CONCLUSION**

22          Based on the foregoing, the court concludes that the Commissioner's final

23   decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

24   ORDERED that:

25          1.      Plaintiff's motion for summary judgment (Doc. 22) is denied;

26          2.      Defendant's cross-motion for summary judgment (Doc. 23) is granted; and

                                        13

1          3.          The Clerk of the Court is directed to enter judgment and close this file.

2

3     DATED:  March 30, 2017

4
                                                _____
5                                                **CRAIG M. KELLISON**
                                                UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26